101 Cal.Rptr.2d 181 (2000)
84 Cal.App.4th 846
In re ADAM N. et al., Persons Coming Under the Juvenile Court Law.
Sacramento County Department of Health and Human Services, Plaintiff and Respondent,
v.
James N., Defendant and Appellant.
No. C034929.
Court of Appeal, Third District.
November 7, 2000.
Review Denied January 24, 2001.[*]
Janice A. Jenkins, Berkely, under appointment of the Court of Appeal, for Defendant and Appellant.
Robert A. Ryan, Jr., County Counsel, Loni Montgomery, Deputy County Counsel, for Plaintiff and Respondent.
SCOTLAND, P.J.
The notice provision of the Indian Child Welfare Act (the Act) (25 U.S.C. § 1901 et seq.) has been the source of a significant number of juvenile dependency appeals filed in the Third Appellate District, and undoubtedly in all of California's Courts of Appeal. There seems to be much uncertainty regarding what circumstances are necessary in order for a juvenile court to know, or have reason to know, that a dependency proceeding involves an Indian child within the meaning of the Act, thus requiring the juvenile court to "notify the parent or Indian custodian and the Indian child's tribe ... of the pending proceedings and of their right of intervention." (25 U.S.C. § 1912(a); further section references are to this code unless specified otherwise.)
In this case, a father whose parental rights were terminated claims the juvenile *182 court erred by failing to give such notice to "the Blackfeet tribe" after the father said "he believed that he has Blackfoot [sic] Indian heritage on his mother's side of the family." [1] We disagree.
As we shall explain, the father's unspecific expression of belief that he had Indian heritage was insufficient to trigger the notice provision of the Act. Accordingly, the juvenile court was not required to comply with the procedural and evidentiary requirements of the Act, and the judgment must be affirmed.

BACKGROUND
A juvenile dependency petition filed on behalf of Adam N. and Amanda N. (the minors) alleged that the minors had suffered, or were at substantial risk of suffering, serious physical harm or illness as a result of their parents' failure or inability to supervise or protect them adequately, and inability to provide regular care for the minors due to the parents' substance abuse problem. (Welf. & Inst.Code, § 300, subd. (b).)[2] As to Amanda only, the petition alleged that she "may come under the provisions of the Indian Child Welfare Act."
According to the report prepared by the social worker for the detention hearing, appellant "stated that he believed that he has Blackfoot [sic ] Indian heritage on his mother's side of the family." Consequently, the Sacramento County Department of Health and Human Services (DHHS) sent notices of each dependency hearing to the Bureau of Indian Affairs (BIA), indicating the minors may have Indian heritage in the "Blackfoot [sic] Tribe." The record contains no response to the notices, and neither the juvenile court nor the parties ever discussed the matter on the record.
The petition was sustained, the minors were adjudged to be dependent children, and appellant was given reunification services. Thereafter, services were terminated, and a permanency planning hearing was scheduled. (Welf. & InstCode, § 366.26.)
In a report prepared for the permanency planning hearing, the social worker asserted that "[BIA] and the Blackfeet Tribe have been noti[fied] of the proceedings regarding Adam and Amanda N.... [T]he paternal grandmother ... stated that eight generations ago her uncle was a Blackfeet Indian Chief, but she and her children are not eligible and never have been eligible for enrollment with the Blackfeet Tribe, nor have they been eligible [for] any benefits for Native Americans." Hence, the social worker opined "the children are not subject to the Indian Child Welfare Act."
At the conclusion of the hearing, the juvenile court found that it was likely the minors would be adopted, and terminated appellant's parental rights. This appeal followed. (Welf. & Inst.Code, §§ 366.26, 395.)

DISCUSSION
"In any involuntary proceeding in a State court, where the court knows or has reason to know that an Indian child is involved, the party seeking the foster care placement of, or termination of parental rights to, an Indian child shall notify the parent or Indian custodian and the Indian child's tribe, by registered mail with return receipt requested, of the pending proceedings and of their right of intervention. If the identity or location of the parent or Indian custodian and the tribe cannot be determined, such notice shall be given to the Secretary [of the Interior] in like manner, *183 who shall have fifteen days after receipt to provide the requisite notice to the parent or Indian custodian and the tribe. No foster care placement or termination of parental rights proceeding shall be held until at least ten days after receipt of notice by the parent or Indian custodian and the tribe or the Secretary ...." (§ 1912(a); see § 1903(11).)
If the identity or location of the parent or Indian custodian and the tribe cannot be determined, notice to the Bureau of Indian Affairs (BIA) satisfies notice to the Secretary of the Interior. (See § la [delegation to the BIA of powers and duties of the Secretary of the Interior regarding laws governing Indian affairs].)
Claiming DHHS knew, or had reason to know, this dependency case involved an Indian child, appellant contends that DHHS failed to adequately comply with the notice requirement of section 1912(a). In his view, notice to BIA was insufficient because DHHS had reason to believe that the minors had Blackfeet heritage and, thus, should have sent a separate notice to the Blackfeet Indian Reservation of Montana.
DHHS retorts that, without more, appellant's mere "belief he had "Blackfoot [sic ] Indian heritage" on his mother's side of the family was insufficient to give the juvenile court reason to know that the minors are Indian children within the meaning of the Act. In DHHS's view, if "vague disclosures of possible Indian heritage rise to the level of knowledge or reason to have the knowledge of Indian child status, DHHS would be sending notices to [BIA] and innumerable tribes on sheer speculation. The [Act] does not contemplate that wasteful, useless energy. The Act specifically defines the Indian child and unless and until the court has specific information [putting the court on notice that the child meets] the statutory definition, the Act has no applicability to state court dependency proceedings."
Appellant counters that the Act's notice provision is triggered by the juvenile court's receipt of any information which, in his counsel's words, "suggests that a dependent child may be of Indian ancestry, ... whether or not the child's Indian status is certain." Therefore, according to appellant, his statement was sufficient to trigger the notice requirement.
To resolve this dispute, we look to the purposes and language of the Act and of the federal regulations implementing the Act (Guidelines for State Courts; Indian Child Custody Proceedings, 44 Fed.Reg. 67584-67595 (Nov. 26, 1979) (hereafter Guidelines)).
Congressional findings memorialized in the Act state among other things: (1) it is in our nation's interest to protect and preserve Indian tribes and their resources; (2) since "there is no resource that is more vital to the continued existence and integrity of Indian tribes than their children," the United States has a direct interest "in protecting Indian children who are members of or are eligible for membership in an Indian tribe"; (3) "an alarmingly high percentage of Indian families are broken up by the removal, often unwarranted, of their children from them by nontribal public and private agencies and ... an alarmingly high percentage of such children are placed in non-Indian foster and adoptive homes and institutions"; and (4) "the States, exercising their recognized jurisdiction over Indian child custody proceedings through administrative and judicial bodies, have often failed to recognize the essential tribal relations of Indian people and the cultural and social standards prevailing in Indian communities and families." (§ 1901.)
Hence, the purposes of the Act are to "protect the best interests of Indian children and to promote the stability and security of Indian tribes and families by the establishment of minimum Federal standards for the removal of Indian children from their families and the placement of such children in foster or adoptive homes which will reflect the unique values of Indian *184 culture, and by providing for assistance to Indian tribes in the operation of child and family service programs." (§ 1902.)
In order to protect the best interests of Indian children and to promote the stability and security of Indian tribes and families, the Act provides that (1) an Indian tribe shall have exclusive jurisdiction over any child custody proceeding involving an Indian child "who resides or is domiciled within the reservation of such tribe, except where such jurisdiction is otherwise vested in the State by existing Federal law," and (2) in the absence of good cause to the contrary, certain state court child custody proceedings shall be transferred to the jurisdiction of the tribe if so requested by either parent (without objection from the other parent) or by the Indian custodian or the Indian child's tribe, provided that "such transfer shall be subject to declination by the tribal court of such tribe." (§ 1911(b).) For those Indian child custody proceedings that remain in state court, the Act sets forth certain evidentiary and other requirements that must be applied. (§§ 1912(b)-(f), 1913(a)-(d).)
And, as we already have noted, the Act requires that notice of any child custody proceeding, including an action to terminate the parent-child relationship (§ 1903(1)), must be provided to "the parent or Indian custodian and the Indian child's tribe," informing them of the pending proceeding and the right to intervene in the proceeding. (§ 1912(a).) "`Indian child's tribe' means (a) the Indian tribe in which an Indian child is a member or eligible for membership or (b), in the case of an Indian child who is a member of or eligible for membership in more than one tribe, the Indian tribe with which the Indian child has the more significant contacts[.]" (§ 1903(5).)
If the notice requirement or any one of the other provisions summarized above is violated, the Act provides for invalidation of an order placing an Indian child in foster care placement or terminating the child's relationship with his or her parent. (§ 1914.)
The Act defines an "`Indian child'" as "any unmarried person who is under age eighteen and is either (a) a member of an Indian tribe or (b) is eligible for membership in an Indian tribe and is the biological child of a member of an Indian tribe[.]" (§ 1903(4).) An "Indian tribe" is defined as "any Indian tribe, band, nation, or other organized group or community of Indians recognized as eligible for the services provided to Indians by the Secretary [of the Interior] because of their status as Indians...." (§ 1903(8).)
The Indian status of the child need not appear "certain" to the juvenile court in order to trigger the notice requirement. (In re Kahlen W. (1991) 233 Cal.App.3d 1414, 1422, 285 Cal.Rptr. 507.) Rather, the court must have "reason to believe a child involved in a child custody proceeding is an Indian...." (Guidelines, B.l. Determination That Child Is an Indian, subd. (a) at p. 67586; see Cal. Rules of Court, rule 1439(e).) "Circumstances under which a state court has reason to believe a child involved in a child custody proceeding is an Indian include but are not limited to the following: [H] (i) Any party to the case, Indian tribe, Indian organization or public or private agency informs the court that the child is an Indian child. [H] (ii) Any public or state-licensed agency involved in child protection services or family support has discovered information which suggests that the child is an Indian child. [H] (iii) The child who is the subject of the proceeding gives the court reason to believe he or she is an Indian child. [H] (iv) The residence or the domicile of the child, his or her biological parents, or the Indian custodian is known by the court to be or is shown to be a predominantly Indian community. [H] (v) An officer of the court involved in the proceeding has knowledge that the child may be an Indian child." (Guidelines, B.l. Determination That Child Is an Indian, subd. (c) at p. 67586.)
*185 The commentary to the aforesaid guidelines points out that "[enrollment [in a tribe] is not always required in order to be a member of a tribe. Some tribes do not have written rolls. Others have rolls that list only persons that were members as of a certain date. Enrollment is the common evidentiary means of establishing Indian status, but it is not the only means nor is it necessarily determinative." (Guidelines, B.l. Commentary, at p. 67586; see United States v. Broncheau (9th Cir.1979) 597 F.2d 1260, 1263.) "It is the tribe's prerogative to determine membership criteria and to decide who meets those criteria." (Guidelines, B.l. Commentary, at p. 67586, citing Cohen, Handbook of Federal Indian Law (1942) p. 133.)
"The written constitutions of tribes ... contain provisions on membership which vary considerably. Generally these constitutions provide that descendants of two parents, both of whom are members of the tribe, shall be deemed members of the tribe. With respect to the offspring of mixed marriages, constitutions differ. Some make the membership of such offspring dependent upon whether his degree of Indian blood is more than one-half or one-quarter. Others make the membership of such offspring depend upon whether its [sic ] parents maintain a residence on the reservation. Nearly all tribal constitutions provide for adoption through special action by the tribe, subject to review by the Secretary of the Interior." (Cohen, Handbook of Federal Indian Law (1942) p. 136; see also Native American Constitution and Law Digitization Project .) Decades ago, the trend of tribal enactments on membership was "away from the older notion that rights of tribal membership run with Indian blood, no matter how dilute the stream." (Cohen, supra, at p. 136.) Therefore, for some tribes, membership has been "a political relation rather than a racial attribute," such that its benefits are "correlative with the obligations that fall upon the members of the Indian community." (Ibid.; see Changing Numbers, Changing Needs: American Indian Demography and Public Health (1996) pp. 104-111; American Indian Law Deskbook (2nd ed.1998) pp. 30-31.)[3]
Accordingly, the Act does not purport to apply to every child who has any Indian blood, no matter how slight. In fact, it is important to emphasize that, if the child is not a member of an Indian tribe, it is not sufficient for purposes of the Act that the child is eligible for membership in an Indian tribe. Rather, as we have pointed out, the Act defines "`Indian child'" as "any unmarried person who is under age eighteen and is either (a) a member of an Indian tribe or (b) is eligible for membership in an Indian tribe and is the biological child of a member of an Indian tribe [.]" (§ 1903(4), italics added.) Thus, to trigger the Act's notice provision, the juvenile court must have information which gives the court reason to know that the child either (1) is, in fact, a member of an Indian tribe, or (2) is eligible for such membership and at least one of the child's biological parents is, in fact, a member of an Indian tribe.
Measured against the aforesaid standards, appellant's statement that he "believed that he [appellant] has Blackfoot [sic ] Indian heritage on his mother's side of the family" was insufficient to give the juvenile court reason to know that the minors are Indian children within the meaning of the Act. Absent from appellant's statement is any indication that the minors are members of an Indian tribe. Absent from appellant's statement is any indication of specific reasons why the minors are eligible for membership in an *186 Indian tribe. Absent from appellant's statement is any indication that the minors' mother is a member of an Indian tribe. And absent from appellant's statement is any indication that he is a member of an Indian tribe; to the contrary, the lack of any indication that he has maintained tribal relations with members of an Indian tribe or has assumed the obligations of tribal membership gives rise to only one reasonable interpretation, i.e., he is not a member of an Indian tribe.[4]
Appellant's reliance on In re Kahlen W., supra, 233 Cal.App.3d 1414, 285 Cal.Rptr. 507 is unavailing because, in that case, the mother's statement that she was a member of the Miwok Tribe was sufficient to give the juvenile court reason to know that her child is an Indian child within the meaning of the Act, even though the mother refused to provide her Indian roll number. (Id. at pp. 1420, 1424-1425, 285 Cal.Rptr. 507; see also, e.g., In re Junious M. (1983) 144 Cal.App.3d 786, 795-796, 193 Cal.Rptr. 40 [parent's statement that she was a member of the Nooksack Tribe because she had one-half degree Indian blood and her mother was an enrolled member of the tribe was sufficient to give the juvenile court reason to know that her child might be an Indian child within the meaning of the Act]; In re Pedro N. (1995) 35 Cal. App.4th 183, 185-186, 41 Cal.Rptr.2d 819 [mother's statement that she was a full-blooded member of the Mono Indian Tribe was sufficient to trigger the Act's notice requirement, but her failure to timely challenge the juvenile court's failure to comply barred her from raising the issue]; In re Levi U. (2000) 78 Cal.App.4th 191, 198, 92 Cal.Rptr.2d 648 [appellate court assumed, but did not specifically decide, that the information provided to juvenile court triggered the notice requirement]; In re Desiree (2000) 83 Cal.App.4th 460, 464-65, 470-471, 99 Cal.Rptr.2d 688 [grandmother's membership in a recognized Indian tribe and mother's claim that she is Chukchansi Indian triggered the notice requirement of the Act, even though evidence indicated mother was not an enrolled member of the tribe].)
Because appellant's unspecific statement did not give the juvenile court reason to know that the minors in this case are Indian children, DHHS had no duty to provide either BIA or any specific tribe with notice of the child custody proceedings at issue in this case. Hence, the fact that DHHS did provide notice to BIA is immaterial, as is the fact that it did not provide notice to the Blackfeet Indian Reservation of Montana. And, because appellant's statement was insufficient to trigger application of the Act's provisions, there is no merit in appellant's contention that the juvenile court erred in failing to conduct the Welfare and Institutions section 366.26 hearing in accordance with the evidentiary and procedural requirements of the act.
Nothing in this opinion should be construed to prevent or discourage the giving, in an abundance of caution, of notice to BIA and Indian tribes in circumstances similar to that present in this appeal. We simply conclude that the information presented to DHHS and the juvenile court in this case did not require DHHS to provide such notice and, thus, the lack of notice does not constitute a valid basis upon which to reverse the judgment.

DISPOSITION
The judgment is affirmed.
RAYE, J., and KOLKEY, J., concur.
NOTES
[*] In denying review, the Supreme Court ordered that the opinion be not officially published. (See California Rules of CourtRules 976 and 977).
[1] The Federal Register listing of all recognized Indian tribes contains but one "Blackfeet" entity, the "Blackfeet Tribe of the Blackfeet Indian Reservation of Montana." (See 61 Fed.Reg. 58211, 58212 (Nov. 13, 1996).)
[2] The petition also contained allegations concerning Carrie W. and Patricia W., who were fathered by another man, but only appellant's children, Adam N. and Amanda N., are the subjects of this appeal.
[3] In the context of federal criminal jurisdiction, the United States Supreme Court has observed that whether a person is considered an Indian depends in part on whether the person has maintained tribal relations with members of an Indian tribe. (United States v. Antelope (1977) 430 U.S. 641, 646, fn. 7, 97 S.Ct. 1395, 1399, fn. 7, 51 L.Ed.2d 701, 708, fn. 7.)
[4] Although not determinative of the issue, we note appellant's mother later told DHHS that, although her uncle was a Blackfeet Indian Chief eight generations ago, she and her children are not eligible and never have been eligible for enrollment with the Blackfeet Tribe.